IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KATHLEEN SCHEPIS             :        CIVIL ACTION

    v.                         :        NO.  03-05970

RAYLON CORPORATION, et al    :


## MEMORANDUM OPINION AND ORDER

**GOLDEN, J.**                                                               February 2, 2007

In a Memorandum Opinion and Order dated September 28, 2006, the Court denied three motions for summary judgment in the instant *quid pro quo* sexual harassment case.  Defendants Raylon Corporation, L'Oreal USA, and David Craggs have filed motions for reconsideration. Because the defendants have failed to show that the Court made a clear error of fact or law in its previous opinion, their motions are DENIED.

**I.  Factual Background**

The plaintiff, Kathleen Schepis, claims to have rebuffed the sexual advances of David Craggs, President of L'Oreal Professional Products, during an evening out at a L'Oreal sales conference in West Palm Beach Florida in October, 2001.  Ms. Schepis served at the time as a L'Oreal Sales and Education Coordinator for defendant Raylon, a Reading-based distributor of L'Oreal products.  Schepis claims that in retaliation for her rebuff, Craggs induced Raylon to fire her.  Schepis did not discuss the alleged events with anyone at Raylon prior to her termination.

The defendants offer a markedly different version of the story.  The defendants maintain that Schepis lost her job due to poor performance, unprofessional behavior, and an inability to complete expense reports and paperwork in a timely manner.

The alleged harassment took place on October 4, 2001; Schepis was terminated by Raylon on October 25, 2001.

## II.  Standard for a Motion for Reconsideration

Motions for reconsideration may only be granted where the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court ruled on the motion for summary judgment; or (3) the need to correct a clear error of law or fact to prevent manifest injustice.  *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  A motion for reconsideration "addresses only factual and legal matters that the court may have overlooked...It is improper on a motion for reconsideration to ask the court to rethink what it had already thought through–rightly or wrongly."  *Glenolden Energy Co. v. Borough of Glenolden*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (internal citations omitted).

### III.  Raylon's Motion for Reconsideration

Raylon asserts that the facts on which the Court relied in denying its motion for summary judgment are not supported by the record of the case, and are actually contradicted by the facts of the case.  The Court disagrees.

In denying Raylon's motion for summary judgment, the Court found that Schepis had

provided evidence from which a jury could conclude that the legitimate, non-discriminatory reasons offered for her dismissal were pretextual. The Court contrasted Schepis' presence at the L'Oreal sales conference—an expensive, out-of-state event sponsored by an important Raylon client—with Raylon's assertions that it fired Schepis because of her unprofessional behavior and inability to responsibly complete travel and expense reports.

Raylon is correct that the Court made semantic mistakes in drafting the opinion denying the summary judgment order. Specifically, Raylon objects to the following passages:

> "Nonetheless, just weeks before her termination, **Raylon sent** Ms. Schepis to an elaborate, out-of-state professional development event sponsored by an important supplier. **Raylon's choice** is inconsistent with Schepis' alleged professional shortcomings. "
>
> "Here, the court returns to **Raylon's decision to send** an allegedly inadequate employee to a conference **as a corporate representative** just prior to her dismissal. It is peculiar that the company would invite a woman known for unprofessional behavior to dinner with a leading executive of a major supplier, or **that the company would authorize** an extended trip for an employee known to be unable to complete expense reports or to manage corporate credit cards."

(Emphasis supplied in Raylon's Motion for Reconsideration, Doc. 53, p. 4).

Raylon points out that, per Schepis' own proffered undisputed facts, she went to West Palm Beach at L'Oreal's express invitation and at L'Oreal's expense. Document 33-1, p.3. Moreover, over the course of her career, L'Oreal would periodically direct Schepis to appear at specific events. *Id.* As a result, Raylon objects to the Court's characterization of Raylon's "decision to send" Schepis to West Palm Beach. Rather, Raylon claims, "L'Oreal wanted her there, not Raylon. Plaintiff's attendance at that event was at L'Oreal USA's request to her. The

L'Oreal USA event was just that—a L'Oreal USA event. Raylon had nothing to do with the event." Raylon's Motion for Reconsideration, Doc. 54, p. 5.

Raylon's argument suggests that it could not have prevented an inadequate employee from attending an event sponsored by an important supplier. Raylon's logic in the current motion runs counter to past statements regarding the supervision of Schepis, particularly the following from L'Oreal's counter statement of facts (Document 38-2), in which Raylon joined:

> L'Oreal USA did not supervise plaintiff's ongoing duties at Raylon. Def.'s Statement of Material Facts, p. 3, ¶ 9(c)
>
> "Plaintiff was strictly an employee of Raylon, and no one from L'Oreal USA had or exercised the authority to hire, discharge, evaluate, promote, or reassign plaintiff or set her wage rates or prepare her daily work schedule." *Id.* at ¶ 19 (b). "Plaintiff did not submit her expense reports to Mr. Craggs [at L'Oreal] and never had any contact with him regarding her duties." *Id.* at ¶ 19 (c).

Although Raylon is correct that the choice of phrasing was unclear, the Court committed not an error of law or fact but an error of semantics, which will not support a motion for reconsideration. Raylon is correct that it did not "invite" Schepis to the Dress for Success conference dinner; however, Raylon had supervisory control over Schepis, and could have directed her not to attend. Similarly, although Raylon did not "send" Schepis to Florida in one sense—because L'Oreal funded her travel—Raylon did "send" her to Florida in another sense, because she attended the event in furtherance of her work for Raylon.

4

The notion that Raylon had "nothing to do" with an event which Schepis attended to advance Raylon's goal of selling more products is implausible.  Because the Court's order denying Raylon's motion for summary judgment did not contain a clear error of law or fact, Raylon's motion for reconsideration will be denied.

**IV.  L'Oreal and David Craggs' Motion for Reconsideration**

L'Oreal and Craggs ask the Court to reconsider three issues:  whether Schepis can show some evidence that a Raylon decision-maker was aware of the alleged harassment by Craggs before terminating her employment; whether she can show evidence that Craggs aided and abetted her dismissal; whether her claim for sexual harassment/hostile work environment should be dismissed because she failed to plead it in her complaint.  Drawing all inferences in the plaintiff's favor, as the Court was required to do to decide the motion for summary judgment, there are still issues of material fact as to Raylon's knowledge of Schepis' encounter with Craggs in West Palm Beach, and Craggs' communication about his encounter with Schepis.  Moreover, although the parties can be assured that the Court will not permit the plaintiff to surprise the defendant with allegations of a hostile work environment at trial, the Federal Rules of Civil Procedure allow the plaintiff to amend her complaint well into the litigation process.  Thus, because Schepis has not pled a count of sexual harassment/hostile work environment, the Court will not rule prematurely on the question of whether such a claim would be dismissed.

**A. A genuine issue of material fact exists regarding Raylon's knowledge of the events in West Palm Beach.**

The defendants cite, correctly, a number of cases to stand for the proposition that an employee cannot experience retaliation if an employer is unaware that he or she has undertaken protected activity. Although defendants are correct that decision-maker knowledge is a component of a *quid pro quo* claim, there are genuine issues of material fact that remain regarding whether any Raylon employees were aware of the alleged conflict between Schepis and Craggs. Kathy Bross, the Raylon executive who fired Schepis, testified at her deposition that she was not aware of any encounter between Schepis and Craggs in West Palm Beach, and that she did not solicit input from L'Oreal prior to terminating Schepis. Bross depo. p. 80, 155-56.

Raylon and L'Oreal work closely together, however, and staff members at various levels discussed Schepis and her work. Schepis reported that before Raylon offered her a job, she met with a L'Oreal representative. Scehpis Depo., p. 26. After Schepis was terminated, L'Oreal contacted Raylon's human resources to insure that it would have input into the selection of her successor. Bross Depo., p. 154.

Moreover, Bross also testified that she initially did not intend to fire Schepis when she called her in to a meeting on October 25, 2001. *Id.* at 54. She notes that two L'Oreal executives were visiting her offices that day, and that she discussed her decision to terminate Schepis with them before actually meeting with Schepis. *Id.* at 46. Moreover, one of the two L'Oreal employees present at Raylon when Schepis was fired was Joseph Glynn, who had attended the L'Oreal sales conference and knew about Schepis' night out with Craggs—albeit with the perspective that it was Schepis who was the aggressor. Glynn Depo. at 85. Before Schepis'

6

firing, Glynn had reported the information about the Schepis/Craggs episode to his colleagues in L'Oreal's human resources department. *Id.* at 87.

Drawing all inferences in Schepis' favor, as is required in a motion for summary judgment, a jury could reasonably conclude that a Raylon decision-maker was aware of a conflict between Schepis and Craggs. The companies had collaborated on personnel decisions in the past. Some version of the Schepis/Craggs narrative was known to L'Oreal's human resources department. L'Oreal executives were on-site visiting Raylon when Raylon human resources staff made a decision to terminate Schepis' employment. A reasonable jury could infer that some information leading to Schepis' firing passed between L'Oreal and Raylon executives. Therefore, a genuine issue of material fact persists.

**B.  There is a genuine issue of material fact regarding Craggs' role in Schepis' termination.**

Craggs maintains that he never spoke to anyone at Raylon regarding his evening out with Schepis. Phone records show, however, that he called Michael Pecce in L'Oreal's human resources department the morning after his encounter with Schepis, prior to leaving the conference in West Palm Beach. Craggs Depo., p. 152. Craggs has testified that he does not remember what their conversation was about. *Id.* at 74.

Although the parties disagree about the nature and source of the inappropriate behavior in West Palm Beach, both sides agree that inappropriate behavior occurred when Craggs and Schepis were together. A jury could reasonably infer that Craggs discussed the encounter with a human resources colleague shortly after it occurred. Therefore, a genuine issue of material fact remains concerning Craggs' participation in Schepis' discharge.

**C. The plaintiff can amend her complaint to bring a claim for a hostile work environment; in the absence of an amendment, plaintiff will not be permitted to present evidence regarding a hostile work environment at trial.**

The defendants seek a definite statement from the Court that the plaintiff may not advance a hostile work environment claim at this point in the case. Much of their legal argument is sound—Schepis has alleged only one instance of inappropriate conduct, which most likely could not serve as the sole basis of a hostile work environment claim.

Schepis' complaint does not enumerate a hostile work environment claim, as the defendants acknowledge on page three of their brief in support of their Motion for Summary Judgment. Thus, the defendants appear to raise this issue preemptively, perhaps anticipating that Schepis' lawyer would attempt to assert such a claim at trial.

A plaintiff is permitted to amend his or her complaint, with leave of the court, if the evidence offered supports a theory other than the one put forward in the complaint. *Newman v. Zinn*, 164 F.2d 558, 559 (3d. Cir. 1947). In other words, a plaintiff may conform his pleadings to the proof after the proof has been developed and offered. *Id.*

In his reply to the defendants' motion for reconsideration, the plaintiff's counsel notes, "nomenclature is of no import" when determining whether Ms. Schepis' claim is properly for *quid pro quo* harassment or employment discrimination. P. 6. Counsel is incorrect—different portions of Title VII and its state equivalent require different kinds of *prima facie* proof. Until Schepis attempts to amend her complaint, however, to assert a claim for a hostile work environment, the Court will not make a ruling on whether her complaint would be sufficient.

8

For the aforementioned reasons, the Defendants' Motions for Reconsideration are DENIED.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN SCHEPIS | : | CIVIL ACTION |
| v. | : | NO. 03-05970 |
| RAYLON CORPORATION, et al | : | |

### ORDER

And now, this 2nd day of February, 2007, after consideration of Defendants', Raylon Corp, L'Oreal USA, Inc., and David Craggs, Motions for Reconsideration (Documents # 53 and 54), it is hereby ORDERED that the Motions are DENIED. A Scheduling Order will follow.

BY THE COURT:

/s/ Thomas M. Golden
THOMAS M. GOLDEN, J.